FILED - KZ
December 12, 2017 3:06 PM
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
jlb Scanned by /

1:17-cv-1088
Janet T. Neff
U.S. District Judge

Ellen S. Carmody
U.S. Magistrate Judge

S.I.R.P.R.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

ALLAN MEDWICK,

        Plaintiff,

v.                 Case No.

WESTERN MICHIGAN UNIVERSITY
HOMER STRYKER M.D. SCHOOL
OF MEDICINE,

        Defendant.

## COMPLAINT

### COUNT I –
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101 et. seq.

    The Plaintiff ALLAN MEDWICK (hereinafter referred to as "MEDWICK") and for his complaint against the Defendant WESTERN MICHIGAN UNIVERSITY HOMER STRYKER M.D. SCHOOL OF MEDICINE (hereinafter referred to as "WESTERN MICHIGAN") states:

    1.     This action is brought for damages sustained by MEDWICK by reason of WESTERN MICHIGAN's violation of MEDWICK's civil rights under Title II of the Americans with Disabilities Act (hereinafter referred to as "ADA"), 42 U.S.C. § 12132.

    2.     At all times relevant hereto, MEDWICK was and a resident of Kalamazoo, Michigan and of the Western District of Michigan.

    3.     At all times relevant hereto, WESTERN MICHIGAN was a corporation organized and existing under the laws of the United States, did substantial business in the

Western District of Michigan and was located at 1000 Oakland Drive, Kalamazoo, MI 49008-8040.

4. WESTERN MICHIGAN is a collaboration involving Western Michigan University and Borgess Health and Bronson Healthcare.

5. At all times relevant hereto, MEDWICK was a "qualified" disabled individual within the meaning of Title II of the ADA.

6. At all times relevant hereto, WESTERN MICHIGAN was an institution subject to the ADA.

7. This Court has jurisdiction pursuant to 28 USC §1343 and §1331.

8. Venue is appropriate in this Court pursuant to 28 USC §1391 since the complained of conduct occurred in this District.

9. Since 2016, MEDWICK began medical school at WESTERN MICHIGAN.

10. At the time that he began, he was suffering from Type 2 diabetes mellitis.

11. Since starting medical school, WESTERN MICHIGAN was aware that MEDWICK suffered from diabetes mellitis.

12. At all times relevant hereto, it was the policy of WESTERN MICHIGAN not to discriminate against any student on the basis of his or her disability.

13. Notwithstanding WESTERN MICHIGAN's policy, MEDWICK was subjected to discrimination by WESTERN MICHIGAN because of his disability of Type 2 diabetes mellitis.

14. Specifically, as school proceeded, MEDWICK's blood sugars began climbing throughout the fall and winter of 2016.

15. MEDWICK developed a non-healing foot wound which worsened to a Stage 3 wound with osteomyelitic concerns despite his adherence to dressing changes, offloading footwear and treatment at the wound care clinic with wound debridement and antibiotics.

16. MEDWICK communicated through his student-mentor physician that he was having difficulty obtaining good medical treatment. Nevertheless, WESTERN MICHIGAN was indifferent with regard to his condition.

17. Moreover, because of his elevated blood sugar, MEDWICK had difficulty concentrating with regard to certain courses and received failing grades in cellular on October 7, 2016 and on October 14, 2016, failed his exam in IMM on February 1, 2017 and HEM on March 1, 2017.

18. On November 4, 2016, MEDWICK advised WESTERN MICHIGAN that he was having difficulty concentrating and focusing because of his diabetes.

19. MEDWICK subsequently passed the IMM exam on March 10, 2017.

20. Commencing in August, 2016, MEDWICK advised his student advisor that he was having difficulty focusing because of his diabetes.

21. On April 7, 2017, MEDWICK had a meeting with the Medical Student Performance Committee (hereinafter referred to as "MSPC").

22. Although MEDWICK indicated that his problem with failing two courses was caused by his diabetes, the MSPC disregarded his disability and told him he could either taken a year off or indicated that if he did not pass one more exam, he would be dismissed from the school.

23. Since MEDWICK's diabetes had not been controlled, he was left with no other option but to take a leave of absence from the school.

24. During this time, MEDWICK still requested that the school provide him accommodation because of his diabetes.

25. In each instance, however, the school rejected his requests and failed to accommodate him in light of his diabetes.

26. For example, on April 19, 2017, MEDWICK met with Dr. Peter Ziemkowski, Associate Dean for Student Affairs, and advised Dr. Ziemkowski that his ongoing medical situation had worsened since late August - early September, 2016 and affected his wellbeing and cognitive function.

27. At that time, he asked for reconsideration of his academic warning status because of his disability.

28. Dr. Ziemkowski indicated that his warning status could not be adjusted and he would have to return from his leave at the same warning status level as when he started his leave.

29. MEDWICK then asked whether there was any other avenue for him to appeal to someone at the school in light of his disability.

30. Dr. Ziemkowski told MEDWICK that no one has authority to rescind his current status either now or on his return to the medical school.

31. MEDWICK then asked whether the Essential Abilities Committee (hereinafter referred to as "EAC") could make some accommodation to him in light of his Type 2 diabetes mellitis.

32. Dr. Ziemkowski indicated that he did not know who was on the EAC and what, if anything, could be done for MEDWICK by the EAC.

33. Instead, Dr. Ziemkowski told MEDWICK that the MSPC was going to finalize a learning contract that would outline the provisions for his leave and that either Medwick agree to those recommendations or take the upcoming test and risk failing it and being dismissed from the school.

34. On April 21, 2017, Dr. David Riddle, the Chair of the MSPC, sent MEDWICK an email requesting that he sign a new learning contract which was drafted on April 21, 2017. A true and correct copy of that contract is attached hereto as *Exhibit A*.

35. MEDWICK subsequently met with Dr. Riddle on that day.

36. During that meeting, MEDWICK addressed the same concerns that he had discussed with Dr. Ziemkowski.

37. At that time, Dr. Riddle told MEDWICK that none of the things that he raised should affect him negatively, there would be ways of working things out and that MEDWICK would not be taking classes for credit.

38. He further indicated that if everything went according to plan, the number of strikes against him would gradually decrease pursuant to WESTERN MICHIGAN's handbook.

39. Dr. Riddle also told MEDWICK that if he did what the MSPC wanted, the committee would be more likely to recommending "making an exception to the one more strike and you're out rule" when he returns, but ultimately, it would be up to Dr. Hal Jenson.

40.

41. WESTERN MICHIGAN's failure to accommodate MEDWICK continued.

42. On April 28, 2017, MEDWICK was refused access to the standard evaluation forms for courses, the completion of which is required under the Code of Professional Conduct.

43. He was not able to finish the evaluations for MEDU 6801, PROF 7312 and CLIN 7412.

44. Parenthetically, the evaluation for PROF 7312 was reopened for other students pursuant to an email from Amber Turner, the Curriculum Coordinator.

45. On May 4, 2017, MEDWICK became aware that he had been removed from all of his classes in Clearvue.

46. On May 5, 2017, MEDWICK received an email from Erin Dafoe who significantly curtailed his approved accommodations. A true and correct copy of that email is attached hereto as *Exhibit B*.

47. On May 27, 2017, MEDWICK went to an introductory meeting to sign up for volunteering at Holy Family Healthcare.

48. At the end of the presentation, MEDWICK was advised that he could not do any clinical volunteering because he was on leave and the school's insurance would not cover him.

49. Similarly, on June 13, 2017, MEDWICK spoke to Dr. Joseph Prahlow, Professor of Pathology, and asked him whether he had any cases.

50. When Dr. Prahlow indicated that he did, MEDWICK was subsequently advised by the autopsy assistant that he could not do anything because he was not covered

under the school's insurance.

51. On July 31, 2017, MEDWICK sent an email to Dr. Ziemkowski inquiring as to why the school was discriminating against him because of his disability and requesting a reconsideration of his academic standing warning status to reset that warning level to zero and to provide him a clinically and medically reasonable time requirement for what constitutes acceptable notification when his blood sugars are either exceptionally high or low. A true and correct copy of this email is attached hereto as *Exhibit C*.

52. On August 1, 2017, Dr. Ziemkowski wrote MEDWICK and indicated that he would be willing to discuss his concerns regarding discrimination. A true and correct copy of that email is attached hereto as *Exhibit D*.

53. On August 3, 2017, MEDWICK sent Dr. Ziemkowski an email in which he acknowledged receipt of his email of August 1, 2017 and inquired as to the identity of the person who could address his current disability and resolve his request for accommodation of that disability. A true and correct copy of that email is attached hereto as *Exhibit E*.

54. On August 4, 2017, Dr. Ziemkowski sent an email back to MEDWICK and indicated that he is the person who would need to discuss MEDWICK's return from leave of absence and that he should make an appointment with him. A true and correct copy of that email is attached hereto as *Exhibit F*.

55. On August 4, 2017, MEDWICK sent an email to Dr. David Overton, Chair of the EAC, to discuss his disability and what accommodations could be made. A true and correct copy of that email is attached hereto as *Exhibit G*.

56. On August 7, 2017, Dr. Overton responded to MEDWICK and indicated that he was willing to meet. A true and correct copy of that email is attached hereto as *Exhibit H*.

57. On August 25, 2017, MEDWICK received an email from Dr. David Overton indicating a willingness to speak to MEDWICK. A true and correct copy of that email is attached hereto as *Exhibit I*.

58. On September 27, 2017, MEDWICK met with Dr. Overton.

59. Instead of addressing and resolving the matter, Dr. Overton merely referred MEDWICK back to Dr. Ziemkowski.

60. In September, 2017, WESTERN MICHIGAN's failure to accommodate MEDWICK took another turn in which it began to threaten MEDWICK.

61. On September 15, 2017, MEDWICK received a letter from Dr. Michael Redinger, Chairman of the Professionalism Sub-Committee of the Medical Student Performance Committee, in which he inexplicably accused MEDWICK of disrespect toward faculty members and directed MEDWICK to complete a professionalism remediation project prior to being reinstated back into the curriculum. A true and correct copy of this letter is attached hereto as *Exhibit J*.

62. On October 25, 2017, MEDWICK responded back to Dr. Redinger in which he indicated he never showed any disrespect to any faculty member at the school and questioned the necessity of taking and completing a "professionalism remediation project." A true and correct copy of MEDWICK's email is attached hereto as *Exhibit K*.

63. On November 14, 2017, Dr. Redinger sent MEDWICK a letter acknowledging receipt of MEDWICK's October 25, 2017 letter indicating that he wanted to meet to discuss the concerns and the processes of the professionalism subcommittee and to get MEDWICK's input. He indicated that the meeting could be deferred until after he had returned from his leave of absence. A true and correct copy of this letter is attached hereto as *Exhibit L*.

64. On November 15, 2017, Dr. Riddle sent MEDWICK an email in which he indicated that WESTERN MICHIGAN expected him to take the cellular foundations course by December 22, 2017 and that they wanted him to take the exam by December 15, 2017.

65. Dr. Riddle does not make any reference, however, to any accommodation being made about MEDWICK's diabetes. A true and correct copy of this email is attached hereto as *Exhibit M*.

66. By virtue of WESTERN MICHIGAN discriminating against MEDWICK by reason of his disability, WESTERN MICHIGAN has, therefore, violated Title II of the ADA by failing to make reasonable modifications in its policies and practices when such modifications were necessary to avoid the discrimination on the basis of MEDWICK's disability.

67. WESTERN MICHIGAN's discrimination was intentional on its part since it did have knowledge of MEDWICK's federally protected rights and its violation of those rights and its failure to act despite that knowledge.

68. As a direct and proximate result of WESTERN MICHIGAN's violation of MEDWICK's rights under the ADA, MEDWICK has incurred pecuniary damages.

9

WHEREFORE the Plaintiff ALLAN MEDWICK requests that this Court enter judgment in his favor and against the Defendant WESTERN MICHIGAN UNIVERSITY HOMER STRYKER M.D. SCHOOL OF MEDICINE as follows:

a. Enjoining WESTERN MICHIGAN from engaging in such unlawful practices as alleged in this complaint.

b. Eliminating the "three strike rule" that MEDWICK is currently subjected should he return to WESTERN MICHIGAN from his leave of absence.

c. Awarding MEDWICK compensatory damages for WESTERN MICHIGAN's violation of his civil rights.

d. Awarding MEDWICK punitive damages in an amount authorized under the ADA.

e. Awarding MEDWICK attorney's fees and prejudgment interest.

f. Awarding MEDWICK such other and further relief as this Court may deem appropriate.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

## COUNT II –
## VIOLATION OF SECTION 504(a) OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 794(a)

The Plaintiff ALLAN MEDWICK (hereinafter referred to as "MEDWICK") and for his complaint against the Defendant WESTERN MICHIGAN UNIVERSITY HOMER STRYKER M.D. SCHOOL OF MEDICINE (hereinafter referred to as the "WESTERN MICHIGAN") states:

1.      This action is brought for damages sustained by MEDWICK by reason of WESTERN MICHIGAN's violation of MEDWICK's civil rights under Section 504(a) of the Rehabilitation Act of 1973, 9 U.S.C. § 794(a).

2-4.    MEDWICK repeats, realleges and incorporates paragraphs 2 through 4 of Count I as paragraphs 2 through 4 of Count II.

5-61.   MEDWICK repeats, realleges and incorporates paragraphs 7 through 63 of Count I as paragraphs 5 through 61 of Count II.

62.     By virtue of WESTERN MICHIGAN discriminating against MEDWICK by reason of his disability, WESTERN MICHIGAN has, therefore, violated Section 504(a) of the Rehabilitation Act of 1973 by failing to make reasonable modifications in its policies and practices when such modifications were necessary to avoid the discrimination on the basis of MEDWICK's disability.

63.     WESTERN MICHIGAN's discrimination was intentional on its part since it did have knowledge of MEDWICK's federally protected rights and its violation of those rights and its failure to act despite that knowledge.

64.     As a direct and proximate result of WESTERN MICHIGAN's violation of MEDWICK's rights under Section 504(a) of the Rehabilitation Act of 1973, 9 U.S.C. § 794(a), MEDWICK has incurred pecuniary damages.

WHEREFORE the Plaintiff ALLAN MEDWICK requests that this Court enter judgment in his favor and against the Defendant WESTERN MICHIGAN UNIVERSITY HOMER STRYKER M.D. SCHOOL OF MEDICINE as follows:

a. Enjoining WESTERN MICHIGAN from engaging in such unlawful practices as alleged in this complaint.

b. Eliminating the "three strike rule" that MEDWICK is currently subjected should he return to WESTERN MICHIGAN from his leave of absence.

c. Awarding MEDWICK compensatory damages for WESTERN MICHIGAN's violation of his civil rights.

d. Awarding MEDWICK punitive damages in an amount authorized under the ADA.

e. Awarding MEDWICK attorney's fees and prejudgment interest.

f. Awarding MEDWICK such other and further relief as this Court may deem appropriate.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,

/s/ Joel F. Handler

JOEL F. HANDLER
One E. Wacker Drive, Suite 510
Chicago, Illinois 60601
(312) 832-0008
Attorney for the Plaintiff,
ALLAN MEDWICK