UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLAN MEDWICK,

    Plaintiff,

v.

WESTERN MICHIGAN UNIVERSITY
HOMER STRYKER M.D. SCHOOL OF
MEDICINE,

    Defendant.

Case No. 1:17-cv-1088

HON. JANET T. NEFF

_____/

**OPINION**

This is an action under the Americans with Disability Act (ADA), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794 et seq. Before the Court is Defendant's motion to dismiss the complaint for failure to state a claim. (ECF No. 29.) The Court will deny the motion.

**I.    Background**

The following is a summary of facts gleaned from Plaintiff's complaint and from a document attached to Defendant's motion.[1] Plaintiff Allan Medwick began medical school at Western Michigan University (WMU) in the fall of 2016. Medwick suffers from "Type 2 diabetes mellitis." (Compl. ¶ 10, ECF No. 1.) During his first term at WMU, his condition worsened. His

---

[1] Although a court generally does not consider documents outside the complaint when assessing a motion to dismiss, the Court may consider some of the documents attached to Defendant's motion for the reasons discussed in Section III.A, below.

blood sugar levels increased and he developed a "non-healing foot wound." (*Id.* ¶ 15.) In August of that year, he told his student advisor that he was having trouble concentrating because of his diabetes. He also told a "student-mentor physician" that he was having difficulty obtaining "good medical treatment" for his condition. (*Id.* ¶ 16.) WMU did not take any action in response to Medwick's concerns.

Medwick's difficulty concentrating affected his academic performance. In October, he failed the exam in his Cellular Foundations ("CEL") course. When he retook that exam later that month, he failed it again. (*See id.* ¶ 17.) These failures caused WMU to place Medwick on "warning academic status," which meant that an additional failing grade in that course could lead to his dismissal from the school. (*See* Ex. 3 to WMU's Mot. to Dismiss, 11/1/2016 Student Learning Contract, ECF No. 29-3.) WMU's student handbook provided that

> a student who: 1) fails the initial summative examination in more than three courses within two consecutive terms, or 2) fails the first remediation attempt in more than two courses within two consecutive terms, or 3) fails in three attempts to pass the summative examination for a course . . . will be dismissed from the medical school.

(Ex. A to Compl., 11/20/2017 Student Learning Contract, ECF No. 1-2, PageID.17.) Because of his warning status, Medwick had to sign a "Student Learning Contract" in which he agreed to retake the CEL exam by April 28, 2017. (11/1/2016 Student Learning Contract, ECF No. 29-3.)

The day after signing the learning contract, Medwick allegedly told "WMU" that "he was having difficulty concentrating and focusing because of his diabetes." (Compl. ¶ 18.) The school did not respond.

The following term, Medwick failed his exams in Foundations of Immunology and Infectious Diseases ("IMM") and Hematology and Oncology ("HEM"). (*Id.* ¶ 17.) He passed the IMM exam on his first retake, but he did not retake the HEM exam.

Medwick met with the Medical Student Performance Committee ("MSPC") on April 7, 2017, to discuss his failing grades. He told the committee that his failures were caused by his diabetes. The committee allegedly told him that he could take a leave of absence or continue his studies. If and when he continued, he would still be on warning status. Consequently, another failing grade would result in his dismissal from the school. After this meeting, Medwick believed that his only realistic option would be to take a leave of absence.

Medwick allegedly attempted to obtain other accommodations from WMU, to no avail. (*See id.* ¶ 25.) For instance, on April 19, 2017, Medwick met with the Associate Dean for Student Affairs, Dr. Peter Ziemkowski, to discuss his situation. Medwick informed Ziemkowski that his medical condition had worsened and was affecting his "wellbeing and cognitive function." (*Id.* ¶ 26.) Medwick asked Ziemkowski to adjust his academic warning status, but Ziemkowski refused to do so. (*Id.* ¶¶ 26-27.) Ziemkowski also told Medwick that the MSPC was finalizing a new student learning contract detailing the terms for Medwick's leave of absence. (*Id.* ¶ 33.)

Medwick received the new contract a few days later. (*See* 4/20/2017 Student Learning Contract, ECF No. 1-2.) The contract noted Medwick's four failed exams and stated that Medwick "has requested and been granted a leave of absence (LOA) to address issues that [Medwick] believes currently limit the student's academic performance." (*Id.*, PageID.16.) The contract provided that Medwick would "return to the curriculum" on November 27, 2017. (*Id.*) Upon his return, he would audit a course while preparing to retake the CEL exam by December 22, 2017. If he passed the CEL exam, he could continue with other courses and retake the HEM exam the following term. The contract indicated that Medwick was still on "warning academic status," and it reminded him of the criteria for dismissal for repeatedly failing exams, as set forth in the student

3

handbook. (*Id.*) It also indicated that Medwick could work out of warning academic status by satisfying the requirements in the contract.

That same day, Medwick met with Dr. David Riddle, the Chair of the MSPC, to discuss the new contract. Medwick raised the same concerns about his condition that he had raised to Dr. Ziemkowski. In response, Riddle allegedly told Medwick that "there would be ways of working things out," and that if Medwick "did what the MSPC wanted," the committee would be "more likely" to recommend "making an exception to the one more strike and you're out rule[.]" (*Id.* ¶ 39.)

In May, Medwick apparently inquired about having his warning status rescinded upon his return to classes in the fall. Dean Ziemkowski responded that school policy does not allow for such a change except under "extraordinary circumstances." (Ex. D to Compl., 5/16/2017 Email, ECF No. 1-5, PageID.27.)

In July, Medwick asked Ziemkowski to reconsider his decision. Specifically, Medwick asked Ziemkowski to "reset" Plaintiff's "academic warning level to zero and to provide . . . a clinically and medically reasonable time requirement for what constitutes acceptable notification when my blood sugars are either exceptionally high or low." (Ex. D to Compl., 7/31/2017 Email, ECF No. 1-5, PageID.26.)

Medwick also complained to Ziemkowski that WMU was discriminating against him because of his disability. His leave of absence had made his situation "significantly worse," from a medical and academic standpoint. (Ex. C to Compl., 7/31/2017 Letter, ECF No. 1-4, PageID.23.) His student health insurance ended and he was unable to see physicians or refill prescriptions due to the expense. Also, the school had denied him access to evaluation forms for his courses and he

could not view his class schedule in the school's online system. In addition, he could not participate in the student clinic because the school's insurance would not cover him.

Ziemkowski apparently denied Medwick's request to change the warning status. He also indicated that Medwick would need to meet with the Essential Abilities Committee ("EAC") to discuss any needed accommodations. (Ex. F. to Compl., 8/4/2017 Email, ECF No. 1-7, PageID.31.)

In August, Medwick contacted Dr. David Overton, the Chair of the EAC, to discuss "what accommodations could be made" in light of Medwick's condition. (Compl. ¶ 55.) Medwick met with Overton on September 27, 2017, but the meeting was unfruitful. Overton "merely referred [Medwick] back to Dr. Ziemkowski." (*Id.* ¶ 59.)

Meanwhile, Medwick received a letter from Dr. Michael Redinger, the Chair of the Professionalism Sub-Committee of the MSPC. In the letter, Redinger informed Medwick that there were "several professionalism concerns" regarding Medwick's "perceived disrespect towards faculty members." (Ex. J to Compl., 9/15/2017 Letter, ECF No.1-11.) Redinger indicated that Medwick would need to complete a "professionalism remediation project" before reinstatement as a medical student, and Redinger asked to meet with Medwick to discuss the details. (*Id.*)

Medwick responded to Redinger by letter, denying that he had ever disrespected faculty and claiming that the professionalism remediation project was evidence of further discrimination on account of Medwick's disability. After receiving Medwick's response, Redinger agreed to delay their meeting until after Medwick returned from his leave of absence.

In November, Dr. Riddle sent Medwick an email reminder that WMU expected him to retake the CEL exam by December 22, 2017. (Ex. M to Compl., 11/15/2017 Email, ECF No. 1-

14.) Riddle indicated that the school intended to schedule the exam for December 15. Medwick notes that Riddle did not mention any accommodations in this email. The month after receiving this email, Medwick filed this lawsuit.

Medwick claims that WMU has discriminated against him on account of his disability by failing to provide reasonable accommodations, in violation of the ADA and the RA. As relief, he seeks compensatory and punitive damages, as well as an injunction. Medwick asks the Court to enjoin the "three strike rule" that would apply to him upon his return to classes.

## II.     Dismissal Standard

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When considering a motion to dismiss for failure to state a claim, the Court generally does not consider matters outside the pleadings unless the Court treats the motion as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). On the other hand, the Court may consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Id*.

**III.  Analysis**

Medwick claims that WMU discriminated against him by failing to accommodate his medical condition, in violation of the ADA and the RA. "Those statutes 'allow[] disabled individuals to sue certain entities . . . that exclude them from participation in, deny them benefits of, or discriminate against them in a program because of their disability.'" *Mbawe v. Ferris State Univ.*, 751 F. App'x 832, 838 (6th Cir. 2018) (quoting *Gohl v. Livonia Pub. Schs.*, 836 F.3d 672, 681 (6th Cir. 2016)). "Claims brought under the Rehabilitation Act are generally reviewed under the same standards that govern ADA claims." *Shaikh v. Lincoln Mem'l Univ.*, 608 F. App'x 349, 353 (6th Cir. 2015) (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010)). Accordingly, to make out a prima facie claim of discrimination under the ADA or RA, Medwick must show the following: "'(1) [he] has a disability; (2) [he] is otherwise qualified; and (3) [he]

7

was being excluded from participation in, denied the benefits of, or subjected to discrimination under [WMU's] program because of [his] disability.'" *Gati v. W. Ky. Univ.*, 762 F. App'x 246, 250 (6th Cir. 2019) (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)).

To summarize Medwick's complaint, he told two school employees, including a student advisor, about his difficulty concentrating because of his diabetes, but the school did not take any action to assist or accommodate him. He then failed his CEL exam twice. WMU placed him on warning status, and he again informed the school about difficulties he faced because of his condition, but WMU took no action to accommodate him other than to give him another opportunity to take the CEL exam. The following term, he failed two more exams. WMU allowed him to take a leave of absence, but warned him that another failure could lead to his dismissal. Medwick asked school officials to adjust his warning status, but they refused to do so. Shortly before Medwick was to return to classes in the fall of 2017, WMU informed him that it expected him to retake his failed exams, but it did not provide any specific accommodations for his condition. In addition, WMU accused him of unprofessional conduct and required him to complete a professionalism remediation project.

### A. Exhibits to WMU's Motion

As part of its motion to dismiss, WMU provides documents that purport to offer some additional facts. For instance, two documents indicate that, in April 2017, Medwick requested the following accommodations for his condition, and WMU approved them:

> Permission to reschedule an exam if experiencing high or low glucose levels; being excused for diabetes-related absences; permission for more frequent and/or extended breaks during clinic.

(Request for Reasonable Accommodation, ECF No. 29-4; 4/11/2017 Email from E. Dafoe to Medwick, ECF No. 29-5.) The Court will exclude these two documents because they are not

referenced in the complaint and, thus, are not properly before the Court in a motion to dismiss. *See Gavitt*, 835 F.3d at 640; Fed. R. Civ. P. 12(d). Moreover, Medwick expressly alleges that WMU rejected his requests for accommodation. (Compl. ¶ 25.) That allegation conflicts with WMU's evidence. The Court declines to resolve this factual dispute by treating the motion to dismiss as a motion for summary judgment.

For similar reasons, the Court excludes a statement signed by Medwick on May 31, 2016, in which he attested that he is capable of completing the medical school's curriculum without accommodation. (*See* ECF No. 29-1.) This statement is neither referenced in the complaint nor central to Medwick's claims.

The Court can, however, consider the Student Learning Contract dated November 1, 2016 (ECF No. 29-3), because it is referenced in the Student Learning Contract dated April 20, 2017, that is attached to, and therefore part of, the complaint. (*See* 4/20/2017 Student Learning Contract, ECF No. 1-2, PageID.16 ("This [Learning Contract] replaces [Learning Contracts] dated November 1, 2016 and April 4, 2017.").) In addition, the Court can consider the student handbook (ECF No. 29-2) because it is referenced in the Student Learning Contracts and is central to Medwick's claim that the school refused to grant an exception to its policy to accommodate his condition.

### B. Exhibits to Medwick's Response

For similar reasons, the Court will exclude Medwick's affidavit attached to his response to the motion to dismiss. That affidavit is not part of the complaint and it is not the sort of evidence that the Court can consider under Rule 12(b)(6), when determining whether the complaint states a claim.

### C. Failure to State a Claim

WMU contends that Medwick's complaint fails to state a claim for several reasons. First, WMU contends that Medwick did not request specific accommodations for his condition until April 2017, by which time he had already failed several exams. WMU argues that Medwick cannot fault WMU for failing to grant accommodations that he never requested. Second, WMU contends that when Medwick requested specific accommodations in April 2017, WMU granted them, but the law did not require WMU to excuse his previous failures because doing so would not be a reasonable accommodation. According to WMU, granting Medwick an exception to its policy would fundamentally alter WMU's academic standards.

#### 1. Failure to Request a Specific Accommodation

WMU asserts that neither the ADA nor the RA required it to extend accommodations to Medwick until he requested them. Generally, "[a] publicly funded academic institution is not obligated to accommodate under the ADA until receiving a proper diagnosis and request for specific accommodation." *See Johnson v. Washington Cty. Career Ctr.*, 470 F. App'x 433, 437 (6th Cir. 2012). The Sixth Circuit has stated this principle several times. *See, e.g.*, *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) ("[T]he College was not obligated to provide accommodation until plaintiff had provided a proper diagnosis of ADHD and requested specific accommodation."); *Carten v. Kent State Univ.*, 78 F. App'x 499, 500-01 (6th Cir. 2003) (citing *Kaltenberger*); *Shaikh*, 608 F. App'x at 353 (same); *see also Marble v. Tennessee*, 767 F. App'x 647, 652 (6th Cir. 2019) ("[A] covered entity is generally not liable for failing to make reasonable accommodation if the plaintiff did not request accommodation or otherwise alert the covered entity to the need for accommodation."); *Mbawe v. Ferris State Univ.*, 751 F. App'x 832, 840 (6th Cir. 2018) (applying rule that "[a]n employee has the burden of proposing an initial accommodation" to a disabled student seeking an accommodation in the

"educational context"). But "this rule of thumb may not be absolute." *Marble*, 767 F. App'x at 652 n.2. If, for instance, the individual's needs are "obvious," that individual's "failure to expressly 'request' an accommodation . . . is not fatal to an ADA claim [because] the defendant otherwise had knowledge of an individual's disability needs, but took no action." *McCoy v. Tex. Dep't of Crim. Justice*, No. C-05-370, 2006 WL 2331055, at *7 (S.D. Tex. Aug. 9, 2006) (collecting cases); *see* 29 C.F.R. § 1630.9(a) ("It is unlawful for a covered entity not to make reasonable accommodation to the *known* physical or mental limitations of an otherwise qualified applicant or employee with a disability . . . .") (emphasis added).

WMU faults the complaint for failing to allege that Medwick requested a specific accommodation through the school's approved procedures prior to April 2017, before he failed several exams. However, the Court is aware of no precedent requiring such detailed allegations at the pleading stage. Two of the cases cited by WMU, *Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789 (N.D. Ohio 2015), and *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042 (6th Cir. 1998), provide that it is the "plaintiff's burden to show he requested an accommodation." *See Buescher*, 86 F. Supp. 3d at 806. However, that burden is an evidentiary one; it is not a pleading requirement. Indeed, *Buescher* and *Gantt* considered motions for summary judgment, not motions to dismiss the complaint for failure to state a claim. The issue before this Court is not whether Medwick has satisfied his burden of production or proof, but whether his allegations in the complaint, taken as true, suffice to state a plausible claim for relief.

Another case cited by WMU, *Carney v. University of Akron*, No. 5:15cv2309, 2016 WL 4036726 (N.D. Ohio July 28, 2016), is distinguishable because the plaintiff in that case never alleged that she "presented a diagnosis of a recognized disability to any official at [the university]." *Id.* at *16. Instead, she alleged that she told university staff that she was "experiencing a difficult

11

year" or that she "continued to struggle with medical problems." *Id.* Her complaints did not give the institution notice of a particular condition, let alone notice of a disability and a need for accommodation.

In contrast, Plaintiff alleges that he notified several faculty/staff members about his diabetes and its impact on his ability to concentrate in the fall of his first term. He further alleges that WMU did not respond to his concerns, and he subsequently failed several examinations, jeopardizing his academic standing. Although it is a close call, the Court finds that these allegations are minimally adequate to state a plausible claim of discrimination based on a failure to accommodate. Whether or not Medwick's specific statements and actions were sufficient to trigger a duty to accommodate is a question that can and should be resolved at a later stage in these proceedings. *Cf. Bernau v. Architectural Stainless, Inc.*, No. 17-CV-10766, 2017 WL 2831518, at *4 (E.D. Mich. June 30, 2017) ("Although Plaintiff's complaint should have specified the requested accommodations, his failure to do so is not fatal. Defendant's argument is better suited at a later stage in the litigation when the legal standard rises above mere plausibility.").

2. Unreasonable Accommodation

WMU also contends that Medwick's request to adjust his warning status is unreasonable because it would require the school to fundamentally alter its academic policy. This is another issue that the Court must resolve at a later stage. As the Sixth Circuit has explained,

> "Fundamental alteration" is an affirmative defense under the ADA providing that governmental entities need not accommodate disabled individuals if doing so "would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. § 35.164. Affirmative defenses to ADA claims such as this are typically fact-based and not capable of resolution on the basis of the pleadings alone.

*Hindel v. Husted*, 875 F.3d 344, 347 (6th Cir. 2017).

WMU compares this case to *Kaltenberger*, in which a graduate student did not seek any accommodations for her ADHD until the end of her second semester. 162 F.3d at 434. By that time, she had already failed two courses, so the school dismissed her. *Id.* After she challenged her dismissal, the school reinstated her, required her to retake her failed courses, and gave her specific accommodations for ADHD, including allowing her to take her exams in a separate room and having extra time to take them. The school's dean denied her request to take an abbreviated summer course in biochemistry, and instead required her to take the full length course. Even with the accommodations provided, however, the plaintiff failed her biochemistry course a second time. School policy did not permit her to retake that exam again, so the school dismissed her for a second time. She then filed suit against the school, claiming that it should have allowed her to take an abbreviated summer course in biochemistry and to take the biochemistry exam one more time.

The Court of Appeals affirmed dismissal of the student's claim on summary judgment, noting that "discrimination laws do not require 'an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person.'" *Id.* at 436 (quoting *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979)). An educational institution, like any other covered entity, "'need not be required to make fundamental or substantial modifications to accommodate the handicapped'"; it is only required to make "'reasonable ones.'" *Id.* (quoting *Alexander v. Choate*, 469 U.S. 287, 300 (1985) (internal quotation marks omitted)). Furthermore, when academic decisions are at issue, "Courts must . . . give deference to professional academic judgments when evaluating the reasonable accommodation requirement." *Id.*

In *Kaltenberger*, the court gave deference to the dean's professional judgment that the plaintiff needed a full length course in biochemistry, rather than a summer remedial course. The court also deferred to the school's judgment not to waive its standard policy regarding retaking

13

failed exams because such a waiver would "lower the standards for continued training in podiatric medicine[.]" *Id.* at 437. Indeed, the plaintiff had already failed the exam twice, including one time when she had the assistance of specific accommodations.

*Kaltenberger* is inapposite. Unlike the court in that case, this Court is not reviewing a motion for summary judgment. Consequently, this Court does not possess, and is not in a position to consider, evidence of a professional academic judgment by WMU that adjusting Medwick's warning status would lower WMU's academic standards.

Moreover, it is not at all clear from the complaint that WMU denied Medwick's request because it determined that altering his status would lower its academic standards. The fact that Medwick sought an exception to the school's standard policy does not necessarily mean that granting his request would lower WMU's standards. Indeed, the policy itself permits exceptions in "extraordinary circumstances." (*See* Medical Student Handbook, ECF No. 29-2, PageID.387 ("Under extraordinary circumstances, the [MSPC] may recommend an exception to the dean of the requirement for dismissal for a student who is not making satisfactory academic progress[.]").) In addition, the Chair of the MSPC allegedly told Medwick that the MSPC might grant an exception if Medwick complied with his Student Learning Contract. From these facts, the Court can infer that granting Medwick an exception to the policy would not necessarily alter WMU's academic standards. Accordingly, Medwick can plausibly claim that his request was a reasonable one.

WMU also contends, relying on *Profita v. Regents of the University of Colorado*, 709 F. App'x 917 (10th Cir. 2017), that Medwick is essentially seeking a "second chance," and that second chances are not reasonable accommodations under the ADA or RA. In *Profita*, a medical school put the plaintiff, a medical student, on academic probation after he failed two clinical

14

rotations in his third year. *Id.* at 918. After he retook one of those rotations, he failed it again, so the school dismissed him. He later attributed his failures to depression, anxiety and lack of sleep. After getting treatment for these conditions, he asked the school to readmit him at the point where his failures began. The school denied his request and told him to reapply for admission. The district court and the court of appeals held that the school had not discriminated against him because he never sought any accommodations until after his dismissal, and in denying his request for reinstatement, the school treated him like all other students who had been dismissed. Applying a "no second chance rule" that excludes "retroactive leniency" from reasonable accommodations, the court held that the school was not obligated to give the plaintiff a "greater opportunity for reinstatement than that given to a terminated person who is not disabled." *Id.* at 921-24.

Unlike the plaintiff in *Profita*, Medwick alleges that he sought accommodations from the school *before* he failed his courses, but the school failed to provide them. If that is the case, then Medwick is not seeking a "second chance" as that term is used in *Profita*. He is not asking to undo negative consequences that befell him through no fault of the school. Instead, he asks not to be penalized for failures that occurred because the school did not accommodate him as it should have. Although WMU contends that Medwick did not, in fact, seek accommodations before he failed his exams, the Court must find otherwise at this stage because it must construe Medwick's complaint in the light most favorable to Medwick. *See Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018). Accordingly, the rule in *Profita* does not apply to the facts before this Court.

In short, the reasonableness of Medwick's requests for accommodation is an issue that must be resolved at summary judgment or at trial. His allegations are sufficient to survive dismissal at this stage.

## **Conclusion**

For the foregoing reasons, the Court will deny WMU's motion to dismiss the complaint.

The Court will enter an order consistent with this Opinion.


Dated: February 19, 2020               /s/ Janet T. Neff
                                                                   JANET T. NEFF
                                                                   United States District Judge